**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**FANFAN EXAMONT, et al.,**

***Petitioners*,**

**v.** **Case No. 5:26-CV-6920-JKP**

**JOSE RODRIGUEZ, et al.,**

***Respondents*.**

**ORDER GRANTING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241 by a family of six. Respondents (sometimes referred to as "the Government") have filed a response (ECF No. 7) to which Petitioners have filed a reply (ECF No. 10). Petitioners have also filed a motion for hearing. *See* ECF No. 11. The Court finds no reason to wait for a response to the motion and finds no reason for a hearing. The Court thus denies the motion. The petition is ready for ruling. Given the four minor petitioners, the Court has expedited the matter over and above its normal habeas procedures.

Petitioners are a family unit consisting of mother, father, and their four minor children. The parents are both citizens of Haiti who resided in New Jersey before their current detention. Their oldest child is a citizen of Haiti. The next two children were born in French Guiana after the family of three had fled Haiti to escape persecution. According to Petitioners, these two children are state-less because French Guiana does not have birthright citizenship and the parents did not apply for Haitian citizenship due to their fear of Haitian authorities. The family of five entered the United States without inspection in September 2021. They were subsequently apprehended, paroled into the United States, and placed in consolidated removal proceedings.

On November 15, 2021, they were each issued a Notice to Appear ("NTA") charging them as inadmissible under two provisions of the Immigration and Nationality Act ("INA"): (1) INA § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)), based on their entry without inspection, and (2) INA § 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)), based on not being in possession of a valid entry document. *See* Exs. I though M (attached to ECF No. 7). They appeared for their initial immigration hearing in April 2022 and were told they would receive notice of their next hearing by mail. Having received inaccurate advice from community members and fearful of being removed to Haiti, the family of five left the United States for Canada so that they would not be immediately removed to Haiti. At the time of their departure, they had not received any notice of their next immigration court date. When they did not appear for their next hearing in June 2022, they were ordered removed in absentia. There orders of removal became administratively final the next month when they failed to appeal.

While in Canada, the family applied for asylum and received work authorization. In 2023, a fourth child was born and is a Canadian citizen. And as the father's epilepsy worsened, the family decided to return to the United States. The family of six re-entered the United States on April 9, 2024; turned themselves into immigration authorities who briefly detained them for processing. The Department of Homeland Security ("DHS") released the family of six and provided written orders of supervision to the five with final orders of removal. The Orders of Supervision state in pertinent part: "Because the agency of has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under [specified conditions of release]." *See* ECF No. 1-2 (Ex. A of Pet.). The five also received a Warning for Failure to Comply with Terms of Supervised Release (ICE Form I-229B) which explains terms of release under INA § 241(a)(3) (codified ats 8 U.S.C. § 1231(a)(3)). The next immigration hearing was scheduled for April 27, 2028. *See* Form I-213 (attached as Ex. H to

ECF No. 5).

For the next two-plus years, the family complied with all immigration requirements. They built a life in New Jersey. They filed for Temporary Protected Status ("TPS") in July 2024. In the summer of this year, the wife was notified to report on July 18, 2026. When she reported as directed, she was instructed to return two days later. When she reported that day, she received an ankle monitor, and was directed to bring the whole family for a September 17, 2026 check-in. On August 19, 2026, the TPS status was terminated. The family was detained upon appearing for the September check-in and received no notice of the revocation of the orders of supervision or reasons for their detention. Although Respondents indicate that they provided Petitioners with an informal interview and a Notice of Revocation of Release, which Petitioners refused to sign, Respondents did not submit that notice to the Court.

Petitioners filed the instant habeas action approximately six weeks after the instant detention commenced. They assert various claims, including that their detention violates 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001) and that Respondents have improperly revoked their prior release from immigration custody.

With respect to the youngest child, who is not subject to a final order of removal, the Government provided the mother with the option of having that child detained with the family or to be released. Because no one was available to care for the child, the mother agreed to keep the child in custody with her. Respondents agree that the family has elected to be removed together as a family unit.

In their response, Respondents argue that the youngest child is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A) until the conclusion of his removal proceedings and that the remainder of the family is detained under 8 U.S.C. § 1231(a)(6) as they are subject to final orders of removal.

They contend that detaining Petitioners beyond the initial 90-day removal period is allowed so long as removal is reasonably foreseeable. They argue that (1) the *Zadvydas* claim is not ripe until Petitioners have been detained in post-order custody for at least six months and (2) Petitioners cannot carry their burden to show good reason to believe that removal is unlikely in the reasonably foreseeable future. They submit that because the family has agreed to be removed together, they will be removed upon resolution of the removal proceedings of the youngest child.

Respondents recognize that *Zadvydas* provides an avenue for habeas relief, but only after Petitioners have been detained for more than six months, and even then, only after Petitioners carry an initial burden. In reply, Petitioners contest both of those positions. They cite numerous decisions to support their position that the six-month period contemplated in *Zadvydas* does not create an absolute bar to claims brought prior to that period elapsing. *See* ECF No. 10 (citing, *inter alia*, *Villanueva v. Tate*, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025); *Zavvar v. Scott*, No. CV 25-2104, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025)). Nearly a year ago, this Court found those three cases persuasive while agreeing that Respondents' prematurity argument "does not preclude detainees from challenging their detention on grounds that their removal is not reasonably foreseeable." *See Marquez-Amaya v. Thompson*, No. 5:25-CV-1501-JKP, 2025 WL 3654327, at *3 (W.D. Tex. Dec. 15, 2025).

Just last month, the Tenth Circuit issued a decision addressing the prematurity issue, *see Abedi v. Carter*, ___ F.4th ___, ___, No. 25-3179, 2026 WL 3149141, at *27 (10th Cir. Oct. 21, 2026), that this Court also finds persuasive. After agreeing that "*Zadvydas* does not establish a bright-line rule under which the first six months of immigration detention are always acceptable and any detention after that point is automatically impermissible," the Tenth Circuit recognized that *Zadvydas* instead "holds that federal courts should exercise their habeas jurisdiction to decide whether a noncitizen is being detained 'within, or beyond, a period reasonably necessary to secure

removal.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 699). While *Zadvydas* "established a presumption of reasonableness for detention during the first six months after a removal order becomes final," that "6-month presumption . . . described in [*Zadvydas*] is just that—a presumption." *Id.* (attributing second quote to *Clark v. Martinez*, 543 U.S. 371, 387 (O'Connor, J., concurring)).

As this Court concluded in *Marquez-Amaya*, while a detained person may bring "a *Zadvydas* claim before the presumptively reasonable six-month period has run," such individual "will have a harder time establishing a right to relief." *See* 2025 WL 3654327, at *4. As accepted in *Marquez-Amaya*, "before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim and prove, that his removal is not reasonably foreseeable." *Id.* (quoting *Munoz-Saucedo*, 789 F. Supp. 3d at 397). "This means that petitioners must claim and prove that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (internal quotation marks and citations omitted). "After six months have elapsed, however, the calculus change." *Abedi*, 2026 WL 3149141, at *28. Once the six-month presumptive period passes and the noncitizen has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Issues of prematurity necessarily depend on when the presumptive six-month period commences. *See Marquez-Amaya*, 2025 WL 3654327, at *4-5 (discussing lack of clarity as to "whether *Zadvydas*'s six-month period runs continually from the beginning of the removal period or only when the challenging party is physically detained," but ultimately concluding that it "need not decide that issue because Petitioner is entitled to relief under either standard). *Abedi* saw no lack of clarity in the calculation of the six-month period and held that the "six-month presumption applies only to the first six months that elapse after the removal period is triggered." *See* 2026 WL 3149141, at *26. There is much appeal and simplicity to such calculation. And *Abedi* provides

solid reasons for its holding. *See id.* at 26-27. In short, according to *Abedi*, "[t]he six-month presumption period therefore does not instantly and automatically invalidate any immigration detention that extends longer than six months or that begins more than six months after the removal period has become final." *Id.* at 28. Nevertheless, at this juncture, this Court still need not make a definitive ruling on when the presumptive period commences in this case.

And while *Marquez-Amaya* found habeas relief warranted regardless of the shifting burdens, *Abedi* addresses a related issue relevant to the burden shifting to the Government. The statute defines when the ninety-day removal period begins and provides some reasons for extending the removal period. *Zadvydas* addressed continued detention after the removal period. The ninety-day removal periods in *Abedi* and this case both passed before the petitioners subject to the removal orders were released from immigration custody. As extensively discussed by the Tenth Circuit, two distinct subsections of 8 C.F.R. § 241 "define the circumstances in which a noncitizen subject to an order of removal may be released after the removal period expires." 2026 WL 3149141, at *14.

Notably, "although § 241.4 establishes one mechanism by which a noncitizen may be released after the removal period has expired, the separate mechanism established in § 241.13 applies when the decision to release a noncitizen is specifically based on the unlikelihood of the noncitizen's removal in the reasonably foreseeable future." *Id.*

> Subsection 241.4 provides that a noncitizen may be released under an order of supervision if either the Director of the Headquarters Post-order Detention Unit ("HQPDU") or "a majority of the Review Panel members" make favorable findings on several specified factors, such as the likelihood that the noncitizen will remain nonviolent if released.

*Id.* (quoting 8 C.F.R. § 241.4(e) and citing § 241.4(f)). On the other hand, "a noncitizen may instead be released based on a determination 'that there is no significant likelihood that [the noncitizen] can be removed in the reasonably foreseeable future.'" *Id.* (quoting 8 C.F.R. § 241.4(b)(4)).

In the latter circumstances, "the decision to release the noncitizen will not be conducted according to the custody review procedures set forth in 8 C.F.R. § 241.4; instead, this decision will be carried out 'pursuant to the procedures provided in 8 [C.F.R. §] 241.13.'" *Id.* (quoting § 241.4(b)(4)).

Considering both provisions, "[s]ubsection 241.13(i) thus establishes the mechanism by which the agency can reverse its earlier determination that the noncitizen is unlikely to be removed in the reasonably foreseeable future." *Id.* at 17. Because Abedi "was released without a formal custody review and without any agency findings on the § 241.4 factors" and his release was explained "that immigration officials had 'been unable to remove [him] from the United States,'" § 241.13 provided the only legal authorization for his release. *Id.*

In this case, although the Government released the family in 2024 upon their return from Canada, there is no indication of any formal custody review, agency findings on § 241.4 factors, or any involvement of the HQPDU or any review panel members. Furthermore, the reason given for their release was simply that the Government had not effected their "removal during the period prescribed by law"—a clear indication that the removal period had expired for the petitioners who had received a written order of supervision.

Importantly, when such a release has been granted to an individual subject to a final order of removal, § 241.13 establishes procedures for revoking the release. Absent a violation of a condition of release, the Government may revoke a § 241.13 release and return a noncitizen to custody only "if, on account of changed circumstances, the [Government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *See* 8 C.F.R. § 241.13(i); *accord Abedi*, 2026 WL 3149141, at *20 ("just as the police cannot permissibly arrest a suspect unless they have reason to believe they have probable cause, immigration officials cannot permissibly revoke a release granted under § 241.13 unless they have reason to believe either that the noncitizen violated the conditions of his release or 'that there is a significant

likelihood that the [noncitizen] may be removed in the reasonably foreseeable future'").

The shifting burdens envisioned in *Zadvydas* differ when a petitioner has been "re-detained based on revocation of" an order of supervision. *See Muniz De La Cerda v. Bondi*, No. 5:25-CV-01665-FB-RBF, 2026 WL 784972, at *4 (W.D. Tex. Mar. 5, 2026) (recommendation of Mag. J.) *accepted by* 2026 WL 981031 (W.D. Tex. Apr. 12, 2026). The differences arise because following the *Zadvydas* decision, "the immigration regulations were revised" to reflect the above-cited regulatory procedures. *Id*. (quoting *Escalante v. Noem*, No. 9:24-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)). And under § 241.13(i)(2), Respondents have the "burden to show a significant likelihood that [the petitioner] may be removed." *Id*. (same).

The Government's burden to show adequate reason for revoking a prior release naturally includes showing changed circumstances resulting in a Governmental determination that there is a significant likelihood that the previously released individual may be removed in the reasonably foreseeable future. And under § 241.13, this burden must be satisfied "promptly" at "'an initial informal interview' at which the government must allow the noncitizen to present any evidence or information pertinent to the government's stated reasons for the revocation of release." *Abedi*, 2026 WL 3149141, at *17.

Given all the foregoing, this Court finds that, in cases of re-detention after a § 241.13 release, the Government has the initial burden to show adequate grounds for revoking the release. Because nothing of record indicates that any petitioner in this case violated any condition of release, the only basis for revocation in this case is changed circumstances as discussed above. Thus, before any petitioner in this case even reaches the *Zadvydas* shifting burdens, the Government had the burden to show a significant likelihood that the previously released individuals may be removed in the reasonably foreseeable future. Nothing of record indicates that the Government carried that burden or made any determination to that effect.

Considering all the foregoing, and after reviewing the briefing, provided evidence, and applicable law, the Court grants the petition based on the law as set out and analyzed in *Shengelia v. Ortega*, No. 5:25-CV-1545-JKP, 2025 WL 3654368 (W.D. Tex. Dec. 16, 2025) (lacking a prematurity issue); *Marquez-Amaya*, 2025 WL 3654327, at *5 (addressing prematurity issue). While there are differences between this case and those cited cases, none warrant a different result. Despite the relatively short duration of the existing detention, the Court finds that the Government is detaining the parents and three older children beyond a period reasonably necessary to secure their removal. The Government revoked their prior release without an adequate change in circumstances or any plan for removal, and the Government has not shown a significant likelihood that the previously released individuals may be removed in the reasonably foreseeable future.

Further, even if the Court were to keep the initial burden on Petitioners to claim and prove that there is no significant likelihood of removal in the reasonably foreseeable future, the Court finds that the undisputed facts and circumstances carry that burden. Even in that scenario, the improper revocation without any material change of circumstances or even a plan of removal for those being re-detained is enough to carry such burden for Petitioners. The Government, not only failed to show adequate grounds for revoking the releases, but it has not responded with evidence sufficient to rebut the showing of Petitioners. Through the circumstances of their re-detention and the undisputed facts, Petitioners have satisfied the requirements of *Zadvydas*.

Petitioners were re-detained on September 17, 2026, with a final order of removal since July 2022. Respondents have not shown changed circumstances that warranted re-detaining any family member. And the circumstances and undisputed facts show that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents have not rebutted that showing. They instead submit that continued detention is warranted because the family has agreed to be removed together and that they will be removed upon resolution of the removal proceedings of

the youngest child. But had Respondents not improperly revoked the prior immigration releases of the parents and three older children, none of the family would be in detention. Further, although the youngest child did not receive a written order of supervision upon his entry into the United States in 2024 with his family, the circumstances show that he also would enjoy the protections afforded the remaining family members who were provided written orders of supervision when Respondents released them previously. The Court will not separate a three-year-old petitioner from his parents who have been detained in violation of *Zadvydas*. And it will not require further detention of the five eldest family members while Respondents proceed with removal proceedings against the youngest child. According to Petitioners, Respondents gave them an initial option to keep the younger child with them in their re-detention or to have him released under the care of someone else. Respondents have not contested that initial offer to release the youngest child. There is no reason to force separation now that the remainder of the family may be released under *Zadvydas*.

Taken as a whole, the circumstances show that there is no significant likelihood of any removal of any petitioner in this case in the foreseeable future and Respondents have not rebutted that showing. The circumstances further support finding that, at the time Respondents revoked the prior release, there had been no changed circumstances that justified re-detention and there was no significant likelihood that they may be removed in the reasonably foreseeable future.

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1) and **DENIES** the Opposed Motion for a Hearing (ECF No. 11). Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires release of the parents and three oldest children from the unlawful detention. Although the youngest child is not subject to a final order of removal, the circumstances warrant his release at the same time as his parents. Fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 are not available in habeas corpus

proceedings like this one. The Court treats the instant action solely as a habeas action under 28 U.S.C. § 2241 and declines to consider any claim other than the alleged *Zadvydas* violation and improper revocation of release.

**IT IS HEREBY ORDERED** that **on or before November 26, 2026**, Respondents shall **RELEASE Petitioners Fanfan Examont, Gladys Charles, and their minor children, J.E., N.Z.E., E.E., and N.E.** from custody to a public location, subject to an order of supervision in accordance with 8 C.F.R. § 241.5 (setting out appropriate conditions of release after removal period).

Respondents must **NOTIFY** Petitioners' counsel of the exact location and exact time of release as soon as practicable and no less than two hours before release.

Any possible or anticipated removal or transfer of Petitioners under this present detention is **PROHIBITED**.

No later than the next business day after the ordered release date, Respondents shall **FILE** a status report to confirm whether Petitioner has been released. If counsel for Petitioner disagrees with any aspect of the filed Status Report, counsel may file a separate Status Report.

A final judgment will be issued separately.

**IT IS SO ORDERED this 24th day of November 2026.**

Jason Pulliam

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**